UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
:
GUANGXI NANNING BAIYANG FOOD :
CO., LTD., :
: 09 Civ. 3059 (TPG)
Plaintiff, :
: **OPINION**
- against - :
:
:
LONG RIVER INTERNATIONAL INC., :
:
Defendant. :
:
:
------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/30/10

Plaintiff Guangxi Nanning Baiyang Food Company ("Baiyang") brought this suit on March 27, 2009, alleging that defendant Long River International, Inc. ("Long River") breached a series of agreements between the parties for the purchase of frozen tilapia filets imported from China to the United States, in violation of the United Nations Convention on Contracts for the International Sale of Goods.

When Long River failed to respond to the complaint within the deadline provided by the Federal Rules of Civil Procedure, a default was entered on June 8, 2009. The very next day, on June 9, 2009, Long River filed an untimely answer asserting affirmative defenses and a counterclaim.

Before the court now is Baiyang's motion for entry of a default judgment under Fed. R. Civ. P. 55(b)(2). Baiyang's motion is granted.

1

## BACKGROUND

The Facts

The following facts are taken from the complaint, from exhibits attached to the complaint, and the parties' briefing. Because defendant is in default, for the purpose of this motion, plaintiff's allegations—except those relating to damages—are assumed to be true.

Throughout 2008, Baiyang made at least 14 shipments of frozen tilapia to Long River at various ports in the United States. Long River paid for the first ten of these shipments without raising any complaints. This action concerns the remaining four shipments.

On or about June 18, 2008, Baiyang and Long River entered into three new agreements for the shipment of frozen tilapia to Chicago and New York. On or about September 25, 2008, Baiyang sent invoices to Long River for these shipments, totaling $422,664. The goods arrived on schedule, on October 23, 2008, October 31, 2008, and November 3, 2008, respectively. Although Long River filed a customs declaration for these shipments, it then refused, without explanation, either to accept the goods or make payment to Baiyang. As a result, U.S. Customs could not release the tilapia for resale until Long River provided an official letter of refusal. Thus the fish sat in its containers.

Over the next few weeks, both Baiyang and its shipping agent, Alliance Logistics, Inc., repeatedly contacted Long River, requesting it to furnish payment or properly reject the goods so that they could be

resold. Finally, on November 21, 2008, Aubrey Tam, Vice-President of Long River, sent Baiyang a letter of refusal, citing continuous complaints from its customers concerning crushed boxes as well as a "lack of quality consistence [sic]" in Baiyang's fish. Once Long River officially refused the goods, Baiyang sold the tilapia filets to another purchaser at a loss. Baiyang contends that this loss was attributable both to a reduction in the value of the fish because it sat in its containers for nearly a month and a decline in the market price of tilapia filets. Baiyang also incurred demurrage fees, which are charged by the shipping carrier for each additional day that the containers are used after the period allotted for the shipment. Baiyang is claiming damages consisting of lost profits and demurrage fees for the three shipments, a total of $141,588.

There also is an issue about a fourth shipment of frozen tilapia which arrived in Boston ("Boston Shipment") on October 8, 2008. Alliance inadvertently released the goods to Long River prior to payment. Thereafter, on October 25, 2008, Long River alleged that certain cartons in the shipment were damaged and requested a discount of $0.25 per pound ($11,000 total on a shipment of 44,000 lbs) based on its supposed need to indemnify its customer, Channel Fish Processing Co., Ltd. In support of its claim that the boxes were crushed, Long River has provided the court with photographs of the Boston Shipment. These photographs, however, only show one or two misshapen boxes. In response to Long River's complaint, Baiyang offered to send Alliance to

Boston to inspect the Boston Shipment, agreeing to reimburse Long River if the cartons were damaged as described. But Long River rejected this proposal, instead taking an advance deduction of $11,000, which would be adjusted upon receipt of Channel's claim. Channel, however, informed Baiyang that it accepted all of the fish in the Boston Shipment at full price and did not claim any discount as a result of the damage to the boxes. Baiyang now requests reimbursement of the $11,000 deducted from payment for the Boston Shipment.

Procedural History

Once Long River issued its letter of rejection on November 21, 2008, Baiyang endeavored to reach a resolution out of court. Baiyang's counsel contacted Long River's counsel repeatedly over the next few months, only to be told that he could not reach his client. Baiyang then filed its complaint on March 27, 2009. Long River was served with the summons and complaint through the Secretary of State for the State of New York on March 30, 2009. Its answer was due on April 20, 2009.

Because Tam of Long River had relocated to Toronto, Canada from New York in February 2009, he did not receive actual notice of the complaint until approximately April 13, 2009. That day, Tam contacted Clyde Mitchell of Claugus & Mitchell LLP to inquire about engaging the law firm to represent Long River. Mitchell of that firm then sent an e-mail to Baiyang's counsel stating that he was in the process of investigating the facts and would be in touch. On April 27, 2009, a week

after the answer was due, Baiyang's counsel notified Long River that it was in default. In response, Mitchell informed Baiyang's counsel that Long River would be filing an answer within the week and proposed settlement negotiations.

Unbeknownst to Baiyang, from approximately mid-April to late-May 2009, Tam and Winston Ye, President of Long River, were engaged in an "internal power struggle" for control of the company and its assets. During this time, Tam instructed Mitchell to suspend all work on the case.

On May 19, 2009, Baiyang expressed its intent to seek entry of default. On May 22, 2009, Ye met with Mitchell, and work on the case resumed. Baiyang then filed for entry of default against Long River on June 5, 2009. On June 8, 2009, the Clerk of the Court issued a certificate of default. The next day, on June 9, 2009, nearly six weeks after the deadline to answer the complaint had passed, Long River filed an untimely answer to Baiyang's complaint.

A conference with the court was held on March 9, 2010.

Plaintiff's Claims

Baiyang requests that the court enter a default judgment in its favor under Fed. R. Civ. P. 55(b)(2) and award compensatory damages of $152,588.00 plus interest and punitive damages of $500,000 as a deterrent. Baiyang also seeks a declaratory judgment that Long River (i) excessively delayed before refusing the goods shipped by Baiyang under

5

the parties' agreements, (ii) refused these goods without a proper legal basis, and (iii) provided an insufficiently specific explanation for its rejection of the goods.

## DISCUSSION

A plaintiff does not enjoy an automatic right to entry of judgment. Rather, "dispositions of motions for entries of defaults and default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Shah v. N.Y. State Dep't of Civil Serv., 168 F.3d 610, 615 (2d Cir. 1999); S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998). Because the Second Circuit has expressed on numerous occasions its preference that disputes be resolved on the merits, not by default, see Marfia v. T.C. Zirant Bankasi, 100 F.3d 243, 249 (2d Cir. 1996), motions for default judgments will be denied where a party appears to defend "unless it is clear that under no circumstances could the defense succeed." Connell v. City of N.Y., 230 F. Supp. 2d 432, 438 (S.D.N.Y. 2002).

The filing of a late answer is tantamount to a motion to vacate a default. See John v. Sotheby's, Inc., 141 F.R.D. 29, 35 (S.D.N.Y. 1992). Fed. R. Civ. P. 55(c) empowers a court to set aside an entry of default upon a showing of "good cause." Because the rule does not define the term explicitly, the Second Circuit has established three criteria that must be assessed in order to decide whether to relieve a party from

default: (1) whether the default was willful; (2) whether a meritorious defense is presented; and (3) whether setting aside the default would prejudice the adversary. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993). The court also considers these factors when determining whether to enter a default judgment under Fed. R. Civ. P. 55(b). See Bank of N.Y. v. Meridien Biao Bank Tanzania Ltd., No. 95 CV 4856(SS), 1998 WL 417510, at *2 (S.D.N.Y. July 24, 1998). All three factors do not need to be met; rather, a default may be entered upon a showing that the three factors on balance support relief.

In this case, the criteria militate in favor of entering Baiyang's requested default judgment.

Analysis of the "Good Cause" Factors

*(1) Willfulness*

In the context of a default, willfulness requires conduct that is more than merely negligent or careless; the defaulting party must have engaged in egregious or deliberate conduct or conduct that was egregious and was not satisfactorily explained. See N.Y. v. Green, 420 F.3d 99, 108 (2d Cir. 2005). A desire to avoid litigation cannot provide an excuse for failing to satisfy a party's obligations in litigation. See Kuklachev v. Gelfman, No. 08-CV-2214 (CPS)(VVP), 2009 WL 497576, at *3 (E.D.N.Y. Feb. 26, 2009). Similarly, a defendant's choice to default for strategic reasons or in order to gain some tactical advantage weighs strongly in

favor of entering default judgment.  See Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 60 (2d Cir. 1996).

Long River neglected to submit an answer and affirmative defenses to the complaint until more than six weeks had elapsed since the filing of the complaint.  Baiyang contends that Long River's default was plainly willful based on the parties' history and Long River's pattern of ignoring correspondence and communications from Baiyang.  And it appears that it was only Baiyang's filing of its application for entry of default that spurred Long River into finally answering the complaint.

Baiyang acted in the utmost good faith throughout the course of the dispute.  The same cannot be said for Long River.  Long River delayed for a substantial period of time, even in letting Baiyang know whether it was refusing or accepting the three shipments.  When it finally rejected the shipments, it spoke of complaints from customers, which apparently had no basis whatsoever.  As to the Boston Shipment, Long River deducted $11,000 from the price without any basis for such deduction, since Long River's customer took and paid for the whole shipment.  After Baiyang was finally forced to sue, Baiyang attempted to engage in settlement negotiations, but there was no response.  Long River knew full well that it needed to answer the complaint, but did not do so until Baiyang had obtained entry of the default.  Long River's conduct was willfully obstructive throughout, and the failure to file a timely answer to the complaint was plainly willful.

*(2) Presentation of a Meritorious Defense*

A defendant seeking to prevent entry of a default judgment must present some evidence beyond conclusory denials to support his defense. See Sony Corp. v. Elm State Elecs., Inc., 800 F.2d 317, 320-21 (2d Cir. 1986). The test of such defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense. See McNulty, 137 F.3d at 738. He must present a defense "which directly relates . . . to the allegations set forth in plaintiff's pleadings and raises a serious question as to the validity of those allegations." Salomon v. 1498 Realty, 148 F.R.D. 127, 130 (S.D.N.Y. 1993). Indeed, without the prospect of a valid defense, "there is little point in setting aside the default judgment." Brown v. Gabbidon, No. 06 Civ. 8148, 2007 WL 1423788, at *4 (S.D.N.Y. May 14, 2007); see also State of N.Y. & Erin D. Crotty v. Kevan M. Green & Polymer Applications, Inc., 420 F.3d 99, 109 (2d Cir. 2005) (characterizing the existence of a meritorious defense as the "key factor").

The court has held a conference to explore whether Long River has a meritorious defense. There is no such defense. The only thing tendered by Long River is a photograph of some of the boxes involved in the Boston Shipment, but all this shows is some minor deformation of certain boxes. And again, this purported evidence has nothing to do with the three shipments. There is apparently no meritorious defense to this case.

*(3) Prejudice*

In the context of a default, "prejudice" means the loss of evidence, increased difficulties of discovery, or greater opportunity for fraud and collusion -- circumstances that make it more difficult for a plaintiff to prosecute its case. See Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983).

The usual considerations about prejudice do not weigh strongly in this case. If there were real issues about the condition of the fish, there might be prejudice from any delay which made it difficult to assemble evidence. However, here there are no real issues about the condition or quality of the fish. Therefore, the two factors described above are decisive, and prejudice is not really a relevant factor.

## CONCLUSION

Long River has demonstrated willfulness and a lack of a meritorious defense to this action. Plaintiff's motion for entry of a default judgment therefore is granted.

Since a factual dispute exists concerning the amount of damages, the court will hold an inquest to determine a proper damages award in accordance with Rule 55(b).

SO ORDERED.

Dated: New York, New York
March 30, 2010

*/s/ Thomas P. Griesa*
Thomas P. Griesa
U.S.D.J.

10